```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/13/06
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA           :

     - against -                :      06 Civ. 0786 (DC)
                                          99 Cr. 1048 (DC)
ROBERT BANKS,                      :

           Defendant.        :

- - - - - - - - - - - - - - - - -x

MEMORANDUM DECISION

APPEARANCES:   MICHAEL J. GARCIA, ESQ.
               United States Attorney for the
                  Southern District of New York
               One Saint Andrew's Plaza
               New York, New York  10007

               ROBERT BANKS
               Defendant Pro Se
               Federal Correctional Institution
               P.O. Box 1000
               Otisville, New York  10963

CHIN, D.J.

        Defendant Robert Banks[1] pled guilty to an information charging him with one count of conspiracy to distribute and possess with intent to distribute a kilogram or more of heroin and one count of being an accessory-after-the-fact to murder. He was sentenced principally to a term of imprisonment of 372 months on Count One and 180 months on Count Two, to be served concurrently. Now proceeding pro se, Banks moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds that (1) he did not understand the charges against

---

[1] In the instant motion, defendant spells his name "Roberto." At all prior stages of this case, defense counsel, the Government, and the Court have spelled defendant's name "Robert." For consistency, I continue that spelling.

him or the consequences of his plea, as a result of which his plea was rendered involuntary, and (2) he was denied effective assistance of counsel.  For the reasons set forth below, the motion is denied.[2]

## BACKGROUND

### A.  The Facts

The Reyes Heroin Organization was a large-scale heroin distribution operation run by Juan ("Junior") Matos Reyes out of the Dominican Republic.  (Tr. 335, 363, 375).[3]  Johan ("El Profesor") Pena-Perez and an individual known as El Potro ran the New York organization under Junior's supervision.  (Id. at 375, 377).  Banks was partners with Junior and was responsible for the distribution of at least 400 kilos of heroin for the organization.  (Id. at 364-65; Plea Agmt. 2).

In May 1998, Andres Peralta, a member of the organization, hired Jaime Gomez, Thomas Marmolejas, and Johnny Martinez to kill Pena-Perez and Nilton ("Barbita") Duran.  (Tr.

---

[2]  Because I find that "it plainly appears from the face of the [section 2255] motion . . . and the prior proceedings in the case that [Banks] is not entitled to relief," I do not order the United States Attorney to file an answer to the instant motion.  See Rules Governing Section 2255 Proceedings for the U.S. Dist. Courts 4(b); Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000).

[3]  References are as follows: "Tr." to the trial transcript in United States v. Gomez, No. S3 99 Cr. 1048 (DC) (S.D.N.Y. 2002); "Plea Agmt." to Banks's plea agreement dated December 17, 2001; "Plea Tr." to the transcript of Banks's plea allocution; "PSR" to the amended pre-sentence report dated July 19, 2002; "Sen. Tr." to the transcript of Banks's sentencing; "Def. Mot." to Banks's § 2255 motion; and "Def. Letter" to Banks's letter dated January 2, 2006 in support of his motion.

383-85).  On May 26, 1998, the hired men drove to an apartment building in the Bronx, where Gomez shot and killed Pena-Perez and wounded Duran.  (Id. at 105, 108, 115, 131, 160).  Later that evening, Marmolejas collected $37,000 from members of the organization for the shooting of Pena-Perez.  (Id. at 694-95; see Marmolejas v. United States, No. 05 Civ. 10693 (DC), 2006 WL 2642130, at *2 (S.D.N.Y. Sept. 15, 2006)).  At Junior's direction, Banks provided $10,000 of this money, knowing that the individuals receiving the money had been involved in a murder and needed the money to avoid apprehension.  (Tr. 472, 481; Plea Tr. 16-20).

B.  **Prior Proceedings**

Banks was indicted on October 12, 1999 for conspiracy to commit murder-for-hire, committing murder-for-hire, and narcotics conspiracy.  By letter dated December 17, 2001, Banks entered into a plea agreement -- which was negotiated by his attorney, J. Bruce Maffeo, Esq. -- with the Government.  The plea agreement provided that the Banks would plead guilty to two counts of a superseding information charging him with (1) a violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A), in connection with his participation in a conspiracy to distribute at least 400 kilograms of heroin, and (2) a violation of 18 U.S.C. §§ 1958 and 2, in connection with his providing money to Marmolejas for the killing of Pena-Perez.  (Plea Agmt. 1).  Banks and the Government stipulated to a total offense level of either 41 or 42 -- depending on whether Banks was deemed to have

qualified for a one-level reduction for timely notifying the Government of his intent to plead guilty -- and a criminal history category of I, and a Guidelines range of 324 months to life imprisonment.  (Id. at 3-4).  The plea agreement also contained a waiver of Banks's right to appeal or otherwise litigate under 28 U.S.C. § 2255 any sentence within or below the stipulated guidelines range.  (Id. at 5).

On December 20, 2001, Banks appeared before this Court, waived indictment, and pled guilty pursuant to the plea agreement.  Banks confirmed that he discussed the plea agreement with his attorney and that he fully understood it before signing it.  (Plea Tr. 13-14).  He further confirmed that he understood the consequences of pleading guilty and that he was entering his plea knowingly and voluntarily.  (Id. at 5, 7, 14, 22).  The allocution also included the following colloquy:

> THE COURT: Do you understand that if your attorney or anyone else has attempted to estimate or predict what your sentence will be, that their estimate or prediction could be wrong?
>
> THE DEFENDANT: Yes, yes.
>
> . . .
>
> THE COURT: And so if [your attorney] or anyone else has said to you, most likely you will get X number of months, that is an educated guess by counsel, and counsel, despite all of his experience, you know, he could be wrong.  That is all I am saying.
>
> THE DEFENDANT: I understand, your Honor.
>
> THE COURT: If it turns out that your sentence is different from what your attorney or

|                | anyone else has told you it might be, or if your sentence is different from what is set out in the plea agreement, or if it is different from what you expect, you will still be bound to your guilty plea and you will not be allowed to withdraw your plea of guilty. |

Do you understand?

THE DEFENDANT: I understand.

THE COURT: Now, the plea agreement also contains a provision with respect to appeal, and it provides that you waive your right to appeal any sentence within or below the stipulated range of 324 months to life.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: What that really means is that whatever sentence I impose in terms of imprisonment cannot be appealed because the top of the stipulated range is life.

THE DEFENDANT: Yes, your Honor, I understand.

(Id. at 11-13).  The Court accepted Banks's plea.  (Id. at 22-23).

Following the plea allocution, the probation department prepared a presentence report ("PSR") containing a calculation of the appropriate sentence under the sentencing guidelines.  The PSR set the total offense level at 41, the criminal history category at I, and the guidelines sentencing range at 324 months to 405 months.  (PSR 20).  The probation department recommended a term of imprisonment of 405 months on Count One and 180 months on Count Two, with the two sentences to run concurrently.  (Id.). In making its recommendation, the probation department noted that Banks was responsible for at least 400 kilograms of heroin --

more than ten times the minimum quantity required for the base offense level on Count One.  (Id. at 21).  The parties did not file any objections to the PSR.  (Id. at 19).

By letter dated June 19, 2002, Maffeo, Banks's attorney, urged the Court to impose a sentence at the lower end of the applicable guidelines range.  Maffeo argued, among other things, that a three-level reduction for acceptance of responsibility, rather than the two-level reduction urged by the Government, was appropriate because of the timeliness of Banks's plea, "which occurred before the trial of his remaining co-defendants and significantly shortened the length of the trial . . . by eliminating the need for the government to introduce proof regarding the history and operation of the drug distribution rings."  (Maffeo Letter dated 6/19/02 to Court at 2).  Maffeo also noted, in connection with the timeliness of the plea, that:

> [I]t was not until December of [2001] that the government discovered and provided the defense with court-authorized electronic surveillance that significantly altered the trial posture of the case and resulted in a significantly revised plea offer than previously had been made available.

(Id.).

Banks was sentenced on June 26, 2002.  I accepted and adopted the PSR's guidelines calculation as to the total offense level, criminal history category, and guidelines range.  (Sen. Tr. 6).  I sentenced Banks to 372 months of imprisonment on Count One, and to 180 months imprisonment on Count Two, to run

concurrently.  (Id. at 15).  I also imposed a term of supervised release of five years on Count One and three years on Count Two, to run concurrently, and the mandatory special assessment of $200.  (Id.).  I noted, among other things, that the amount of heroin involved in this case was extraordinary.  (Id. at 14).

Banks did not appeal.  On January 2, 2006, he filed this motion.

## DISCUSSION

Banks's motion is denied.  First, he waived his right to challenge his sentence, whether by a motion under § 2255 or otherwise.  Second, the motion is time-barred.  Finally, even assuming that Banks is not precluded from challenging his sentence, the motion must be denied on the merits.

**A.   Waiver of Rights**

In his plea agreement, Banks explicitly agreed that he would "neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence within or below the stipulated Guidelines range."  (Plea Agmt. 3).  The Second Circuit has held such waivers enforceable:

> In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.  Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993); see also United States v. Djelevic, 161 F.3d 104, 106-07

(2d Cir. 1998) (knowing and voluntary waiver of right to appeal sentence within agreed upon guideline range is enforceable).

The Second Circuit has also held, however, that "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been produced, here, the plea agreement." Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002) (citing United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam)). Accordingly, the district court "does not automatically enforce § 2255 waivers in the face of ineffectiveness of counsel, as such claims 'may call into question the very legitimacy of the § 2255 waivers.'" Itzkowitz v. United States, No. 04 Civ. 63 (DC), 2004 WL 1672451, at *2 (S.D.N.Y. July 27, 2004) (citing Mendez v. United States, No. 01 Civ. 2924 (RMB), 2002 WL 226693, at *2 (S.D.N.Y. Feb. 13, 2002) (quoting Paulino v. United States, No. 01 Civ. 1174 (LBS), 2001 WL 630486, at *2 (S.D.N.Y. June 6, 2001))).

Banks's motion must be denied because he waived his right to appeal or otherwise challenge his sentence. First, I conducted a thorough allocution and specifically asked Banks whether he understood that he was giving up his right to appeal or in any other way litigate his sentence if it fell within the range stipulated by the plea agreement, and Banks responded affirmatively. (Plea Tr. 13). Second, Banks confirmed that (1) he discussed the plea agreement with his attorney, (2) he read and fully understood the plea agreement before signing it, and

(3) he had not been induced in any way to enter into the plea agreement.  (Id. at 13-14).  Third, he also confirmed that he was satisfied with his attorney and his attorney's representation of him.  (Id. at 5).  Finally, as discussed below, Banks's ineffective assistance of counsel fails on the merits.

Consequently, I find that the plea agreement is valid.  Because I sentenced Banks within the stipulated range of 324 months to life imprisonment, he has waived his right to challenge his sentence and is precluded from making this motion.

**B.   Equitable Tolling**

Assuming, arguendo, that Banks has not waived his right to challenge his sentence, the motion must still be denied because it is time-barred.

**1.    Applicable Law**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a defendant has one year to file a motion to "vacate, set aside or correct [his] sentence."  28 U.S.C. § 2255.  Except in circumstances inapplicable here, AEDPA's limitation period commences on "the date on which the [movant's] judgment of conviction becomes final."  Id.  "[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."  Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005).

In certain circumstances, a court may excuse a defendant's delay in filing a motion pursuant to 28 U.S.C. § 2255 under the doctrine of equitable tolling.  See Smith v. McGinnis,

208 F.3d 13, 17 (2d Cir. 2000) (habeas petition brought pursuant to 28 U.S.C. § 2254).[4]  The one-year limitations period is subject to equitable tolling only in "rare and exceptional circumstance[s]."  Id. (quoting Turner v. Johnson, 177 F.3d 390, 391-92 (5th Cir. 1998)).  The Supreme Court has cautioned that the doctrine of equitable tolling should be used "only sparingly" and not in cases involving "garden variety claims of excusable neglect."  Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).[5]

To equitably toll the one-year period of limitations, the party seeking to rely on the doctrine bears the burden of establishing two elements: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way.  Pace, 544 U.S. at 418 (citing Irwin, 498 U.S. at 96).  These requirements are to be strictly construed.  Barbosa v.

---

[4] The Supreme Court recently noted that it has "never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations."  Pace v. DiGuglielmo, 544 U.S. 408, 418 n.8 (2005) (comparing Pliler v. Ford, 542 U.S. 225 (2004)).  Along with every other circuit that has addressed the question, the Second Circuit has held that the AEDPA filing limitation is subject to the doctrine of equitable tolling.  See Smith, 208 F.3d at 17; Dunlap v. United States, 250 F.3d 1001, 1004 n.1 (6th Cir. 2001) (listing circuit court cases holding that equitable tolling applies to AEDPA cases).

[5] Although Irwin was an employment discrimination case, the same doctrine of equitable tolling has been applied in habeas cases as in other civil cases.  See, e.g., Pace, 544 U.S. at 418 (citing Irwin, 498 U.S. at 96, in its analysis of habeas petitioner's argument for equitable tolling); Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (quoting Smith, 208 F.3d at 17, a case involving a habeas petitioner, in its decision affirming the district court's refusal to equitably toll EEOC filing deadline).

United States, No. 01 Civ. 7522 (JFK), 2002 WL 869553, at *2 (S.D.N.Y. May 3, 2002).

To establish extraordinary circumstances, the party seeking equitable tolling must support his allegations with evidence; he cannot rely solely on personal conclusions or assessments.  See Mendez v. Artuz, No. 99 Civ. 2472 (DLC), 2000 WL 991336, at *2 (S.D.N.Y. July 19, 2000) (stating that conclusory allegations do not satisfy high burden required to justify tolling).  Further, the party must show that he was unable to pursue his legal rights during the entire period that he seeks to toll.  Barbosa, 2002 WL 869553, at *3.

**2.    Application**

In the instant case, because no appeal was taken, Banks's conviction became final on August 1, 2002, ten business days after the judgment of conviction was entered.  See Fed. R. App. P. 4(b)(1)(A).  Banks thus had one year from that date to file a motion challenging his sentence.  Banks's first letter to the Court was not received until December 13, 2005, and his § 2255 petition was not received until January 17, 2006 -- more than two years after the statute of limitations had expired.

Banks explains that his motion was untimely because he is "uneducated concerning law" and was unaware of the one-year limitations period.  (Def. Letter 1).  He also appears to be asserting that his attorney somehow failed to pursue a course of action with respect to his sentence.  (Id.) ("I was relying on my

- 11 -

attorney and on what he had promised me that we would, which was to fight certain issues in the future.  This never happened, even after several attempts.").  He does not, however, allege that he directed his attorney to file an appeal or otherwise challenge his judgment or sentence.

Banks has not demonstrated any extraordinary circumstances warranting equitable tolling.  First, ignorance of the law is not "extraordinary" in the sense required by the equitable tolling doctrine.  Ahmeti v. United States, No. 04 Civ. 10207 (RLC), 2006 WL 2528464, at *2 (S.D.N.Y. Aug. 31, 2006) (quoting Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5th Cir. 1991)).  Second, Banks offers only the conclusory allegation that his attorney failed to keep a promise to "fight certain issues"; he provides no evidence as to how his attorney failed to do so.  (See Def. Letter 1).  Even assuming that Banks's attorney was somehow negligent in his representation, mere attorney negligence is not a basis for equitable tolling.  See Torres v. Barnhart, 417 F.3d 276, 283 (2d Cir. 2005) (citing Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (per curiam)); Baldayaque v. United States, 338 F.3d 145, 151-52 (2d Cir. 2003) (attorney's misconduct must be outrageous or egregious to render it extraordinary).  Furthermore, Banks has not shown that he acted with reasonable diligence in pursuing his claim during the time he seeks to toll.  Accordingly, no basis exists for equitable tolling.

**C.   The Merits**

On the merits, Banks argues that: (1) his plea was not entered knowingly and voluntarily because he did not understand the nature of the charges against him or the consequences of his plea, and (2) he was deprived effective assistance of counsel.  I address each claim in turn.

   **1.   Knowing and Voluntary Plea**

Banks asserts that his plea was not entered knowingly and voluntarily in two respects.  First, he contends that he did not know he was accepting responsibility for distributing at least 400 kilograms of heroin.  (Def. Letter at 3).  Banks claims that he "signed a plea for 324 months, but was sentenced to an additional 48 months . . . due to the amount of drugs."  (Id.).  Second, Banks contends that he pled guilty to being an accessory-after-the-fact to murder only because his attorney assured him that the charge carried a term of imprisonment of no more than five years.  (Id. at 4).

Banks's contentions, however, are refuted by the record.  With respect to the amount of heroin involved, Banks confirmed that he had read the plea agreement -- which provided that the total quantity of heroin for which he was responsible was at least 400 kilograms -- and discussed it with his attorney and fully understood it before signing it.  (Plea Tr. 13-14).  When asked if he was involved in distributing more than 300 kilograms of heroin, Banks answered in the affirmative.  (Id. at

16).[6]  Furthermore, Banks's claim that he was sentenced to an extra 48 months on top of the 324 months set forth in his plea agreement is factually incorrect.  The plea agreement did not provide for a sentence of 324 months; it provided for a stipulated range of 324 months to life.  (Plea Agmt. 4).  Hence, 324 months was only the starting point.  In any event, Banks confirmed that he understood that the Court had discretion to depart from the stipulated range set forth in the plea agreement.  (Plea Tr. 12-13).

As for Banks's claim concerning the charge for accessory-after-the-fact to murder, I specifically asked Banks whether he understood that his sentence could be different from what his attorney may have told him it would likely be, and Banks stated that he understood.  (Id. at 12).  Moreover, Banks's contention that he was told that the charge carried a five-year term of imprisonment is belied by his plea allocution and plea agreement.  (Id. at 9-10; Plea Agmt. 1, 4).  Further, it is difficult to imagine that Banks's lawyer really told him that he would only be sentenced to five years' imprisonment for paying money to individuals he knew had committed a murder -- a drug-related execution -- to help them avoid apprehension.

---

[6]  While there is arguably a discrepancy as to the quantity of heroin -- 400 kilograms versus 300 kilograms -- for which Banks accepted responsibility, this discrepancy would not have made any difference in the sentence I imposed. Either quantity, for example, is more than ten times the minimum quantity required for the applicable offense level. See U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (2002).

Based on the foregoing, Banks was clearly aware of the nature of the charges against him and the consequences of his guilty plea.  As the Second Circuit has held, a "criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity and are generally treated as conclusive in the face of the defendant's later attempt to contradict them."  Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) (internal citations and quotation marks omitted).  This aspect of the motion is therefore denied.

### 2.     **Ineffective Assistance of Counsel**

To prevail on his claim of ineffective assistance of counsel, Banks must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) he was prejudiced by counsel's deficient performance.  See Strickland v. Washington, 466 U.S. 668, 686-88 (1984).  When applying the Strickland test, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.  "The court's central concern is not with 'grad[ing] counsel's performance,' . . . but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'"  United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696).

Where a defendant challenges a guilty plea on the basis of alleged ineffective assistance of counsel, to satisfy the

- 15 -

second prong of the Strickland test the defendant must show that, but for counsel's error, there is a reasonable probability that he would not have pled guilty. Hill v. Lockhart, 474 U.S. 52, 59 (1985); Tate v. Wood, 963 F.2d 20, 23-24 (2d Cir. 1992).

Banks claims that he was denied effective assistance of counsel on two grounds. First, he contends that his attorney advised him to plead guilty, even though his attorney "knew that [he] was being made solely responsible for an astronomical amount of heroin . . . that [he] was never a part of and never did sell." (Def. Mot. 6).

Banks does not specify the second ground of his claim. He refers to "a certain court authorized electronic surveillance that significantly altered the trial posture of the case and which resulted in a significantly revised plea offer than had previously been made available" (Def. Letter 5), but provides no facts that would enable the Court to determine that he received ineffective assistance of counsel in connection with this surveillance.[7] The tape of the surveillance apparently contained audio recordings of communications between a man identified as "Robert" and a woman who Banks claims he does not know. (Id.). Banks complains that he did not have the opportunity to hear the

---

[7] Presumably, the surveillance to which Banks refers is the same as that noted in Maffeo's June 19, 2002 letter, from which Banks clearly borrowed in writing his January 2, 2006 letter in support of his motion. Maffeo's letter, however, sheds no light on the basis for Banks's claim. Maffeo only mentions the surveillance in arguing that, given the time at which the Government first made the surveillance available to the defense, Banks's plea should be considered timely. (See Maffeo Letter dated 6/19/02 to the Court at 2).

tape, but was assured by his attorney, who did hear it, that he was the "Robert" on the tape.  (Id.).

Banks's claims are meritless.  First, as I presided over the case, I have first-hand knowledge of counsel's work in the case.  Maffeo, an experienced and capable defense attorney, ably represented Banks.  Indeed, during his plea allocution, Banks stated that he was satisfied with Maffeos's representation of him.  (Plea Tr. 5).

Second, because Banks's ineffective assistance of counsel claim is in part based on his contention that he did not understand the charges to which he pled guilty -- specifically, that he was being held accountable for distributing at least 400 kilograms of heroin -- the claim must fail.  As discussed earlier, the record clearly refutes Banks's contention.  There is no evidence that, but for Maffeo's actions, Banks would not have pled guilty.

Third, I reject any suggestion that Banks was not given the opportunity to review the surveillance tape.  Had Banks asked for such an opportunity, Maffeo surely would have accommodated him.  In any event, Maffeo had represented Banks in these proceedings since October 1999, and surely was in a position to confirm whether his client was actually the man heard on the tape.  Banks would not have pled guilty and agreed to a range of 324 months to life if he had entertained any serious doubt as to the Government's evidence against him.

Accordingly, as Banks has not demonstrated that he received ineffective assistance of counsel, his motion is denied in this respect.

## CONCLUSION

For the reasons set forth above, Banks has failed to demonstrate any basis for relief under 28 U.S.C. § 2255. The motion is therefore denied. Because Banks has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2255 (1996) (as amended by the Antiterrorism and Effective Death Penalty Act). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall close this case.

SO ORDERED.

Dated: New York, New York
October 13, 2006

DENNY CHIN
United States District Judge